UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THERONE MAGEE** | § | **CIVIL ACTION NO.: 14-1554** |
| | § | |
| **VERSUS** | § | **SECTION:  H** |
| | § | |
| **DISTRICT ATTORNEY WALTER REED,** | § | **MAGISTRATE:  1** |
| *ET AL* | § | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Brandon Stephens ("**Defendant**"), who respectfully submits the following Reply Memorandum in Further Support of his Motion for Summary Judgment, seeking dismissal of the claims made against him by Plaintiff, Therone Magee.

<u>**PLAINTIFF'S OBJECTIONS**</u>

At the outset of his opposition memorandum, Plaintiff offers a boiler-plate and conclusory objection to the affidavits of Det. Crain and Capt. Schlesinger. The Plaintiff makes no effort to outline what statements or materials, if any, are specifically objectionable; instead, he makes only blanket objections on the basis of hearsay and lack of personal knowledge and essentially asks this Court to conduct a line-by-line analysis of these exhibits to excise such objectionable materials.

<u>Exhibit A:</u> Exhibit "A" is the affidavit of Det. Scott Crain, who was the undercover narcotics officer who conducted the controlled purchase that lies at the heart of the Plaintiff's claims against Det. Stephens. Det. Crain's affidavit is made on personal knowledge and is further corroborated by reference to the Kel audio recording that was made contemporaneously with this

89211/461228

investigation. The Plaintiff claims that this affidavit is "rank with hearsay statements allegedly said or done by another individual, such as a cooperating witness, other police officer, or other party. They also contain alleged statements by text messages or otherwise, none of which is in any record or authenticated in any way."

As this Court is well-aware, Fed. R. Evid. 801 defines "hearsay" to be a statement that:

1. The declarant does not make while testifying at the current trial or hearing; and
2. A party offers in evidence **to prove the truth of the matter asserted in the statement**.

None of the statements attributable to individuals other than Det. Crain found within his affidavit have been offered to prove the truth of any such matter asserted. Det. Stephens has not offered Det. Crain's affidavit to prove the truth of the matters asserted by those other named persons listed within the affidavit. Rather, Det. Stephens is offering this affidavit, and his own written narrative concerning this investigation, to illustrate the information that was available to himself and his fellow officer, Det. Crain, from the time this investigation began through the swearing of the warrant affidavit before Judge Penzato.

The challenged portions of these affidavits are not being offered to prove the truth of matters asserted by non-affiants; instead, "they are offered to show what the officers knew during the investigation and their reasoning in making their probable cause determinations. These are non-hearsay purposes."[1] In effect, the statements of third-parties found within Det. Crains, including those made by "Brandon," "Mike," and the "CI" are being offered only to support the fact that these statements were, in fact, made.

---

[1] *Porter v. Lear*, 751 Fed. Appx. 422, 433 (5th Cir. 2018) (citing Fed. R. Evid. 801(c); *United States v. Dunigan*, 555 F.3d 501, 507 (5th Cir. 2009) ("Testimony describing an investigation's background should not be needlessly objected to on hearsay grounds where it goes only to how police investigated a crime rather than to the truth of the matter asserted.")).

<u>Exhibit C</u>: Furthermore, the attachments authenticated by Captain Schlesinger in her affidavit include official business records of the St. Tammany Parish Sheriff's Office that are kept in the normal course of business and are public records.

Hearsay statements are admissible if they meet one of the exceptions under the Federal Rules of Evidence.[2] Federal Rule of Evidence 803(8) excludes from the hearsay rule certain public records, and it contemplates the admissibility of "factual findings from a legally authorized investigation."[3] A public record is not excluded by the hearsay rule if it is a record, report, statement, or data compilation setting forth "(i) the office's activities; (ii) a matter observed while under a legal duty to report . . . (iii) in a civil case . . . , factual findings from a legally authorized investigation; and . . . the opponent does not show that the source of information or other circumstances indicate lack of trustworthiness."[4] The Rule 803(8) exception "is based upon the principles that public documents prepared in the discharge of official functions are presumed trustworthy, and the necessity of using such documents is due to the likelihood that a public official would have no independent memory of a particular action or entry where his duties require the constant repetition of routine tasks."[5]

The Plaintiff has failed to show how any of the properly authenticated business records and public documents attached to the affidavit of Captain Schlesinger "indicate a lack of trustworthiness." Furthermore, Det. Stephens' written report regarding his investigation has been offered into evidence to show the knowledge, observations, and investigative steps that were taken by him in investigating these alleged crimes. Det. Stephens has not proffered this report to prove the truth of the matter asserted with respect to any statements made by Det. Crain, the CI,

---

[2] Fed. R. Evid. 802.
[3] Fed. R. Evid. 803(8)(A)(iii).
[4] Fed. R. Evid. 803(8).
[5] *United States v. Becerra-Valadez*, 448 F. App'x 457, 461 (5th Cir. 2011).

89211/461228

"Brandon," or "Mike," as such statements, regardless of their truth at the time of their uttering, only served to inform Det. Stephens' mental assessment of this case. In addition, Det. Crain has submitted his own affidavit setting out exactly what he relayed to Det. Stephens regarding this investigation. In conclusion, the Plaintiff's boiler-plate objections are unavailing and inapplicable to the materials offered in support of Det. Stephens' summary judgment motion.

1. **PLAINTIFF HAS FAILED TO REBUT QUALIFIED IMMUNITY**

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available."[6] Plaintiff has not cited any case in which any court has held that an officer may not rely upon an identification from an allegedly-suggestive show up when determining whether he has probable cause to arrest. Therefore, the Plaintiff has failed to satisfy his burden of proof in showing qualified immunity is inapplicable here.

"Probable cause and the ensuing qualified immunity analysis turn on [the arresting officer's] reasonable beliefs and knowledge, including information received from eye witnesses."[7] To be sure, Plaintiff "must clear a significant hurdle to defeat [Det. Stephens'] qualified immunity."[8] "[T]here must not even arguably be probable cause for the...arrest for immunity to be lost."[9] The arresting officer is entitled to qualified immunity "if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [the arresting officer] was aware, there was a fair probability that [the arrestee] had committed or was committing an offense."[10] As detailed below, there is no genuine

---

[6] *Melton v. Phillips*, 875 F.3d 256, (5th Cir. 2017) (quoting *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)).
[7] *See Bone v. Dunnaway*, 657 Fed.Appx. 258, 261 (5th Cir. 2016)(citations omitted).
[8] *Haggerty v. Texas Southern University*, 391 F.3d 653, 656 (5th Cir. 2004).
[9] *Id.*
[10] *Id.* (noting that "'fair probability' requires more than bare suspicion but less than a preponderance of evidence").

issue of fact that Det. Stephens possessed probable cause at the time he requested a warrant from the State court for the Plaintiff's arrest.

> a. **Det. Stephens was entitled to rely upon the sworn statement of Det. Crain identifying the Plaintiff as alleged drug-dealer**

The Plaintiff has failed to show that clearly-established federal law prohibited Det. Stephens from relying on Det. Crain's identification in his probable-cause analysis.[11] The Plaintiff's opposition regarding the identification made by Det. Crain of the Plaintiff in the hours following the controlled-purchase showcases a fundamental misunderstanding of the Supreme Court's controlling jurisprudence regarding photo-lineups. First, the Plaintiff begins by summarily concluding that "Det. Stephens own evidence reveals that he improperly used a single-photo line-up in an attempt to establish Mr. Magee's guilty with Deputy Crain."[12] However, as this Court is well-aware, whether an individual is guilty of a crime is separate and distinct from whether a peace officer investigating a potential crime has probable cause to believe a crime has been committed by a particular person.

Second, the Plaintiff's opposition summarily concludes that single-photo line-ups are *per se* unconstitutional; however, the Supreme Court's jurisprudence on this topic is decidedly more nuanced than the Plaintiff would suggest. "The United States Supreme Court has held that the determination of whether a defendant's Fourteenth Amendment due process rights are violated by the admission of evidence at trial derived from unnecessarily suggestive identification

---

[11] *See Penn v. Bergtold*, 2019 U.S. Dist. LEXIS 6453, **14-15 (E.D. Mich. 04/15/19) (discussing the lack of clearly established law prohibiting peace officers from relying on suggestive identification techniques in making probable-cause determinations).
[12] Rec. Doc. 88, p. 8.

89211/461228

procedures depends upon the totality of the circumstances surrounding those procedures."[13] In *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), the Supreme Court described the standard under the Due Process Clause as one of fairness, and identified the interest protected in *Stovall* as evidentiary.[14] Similar to the facts presented by this litigation, *Manson* involved a challenge to a single-photo identification made by an undercover narcotics officer who was involved in a controlled-purchase of narcotics.

The *Manson* Court noted that "a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest,"[15] and held that "reliability is the linchpin" in determining the admissibility of such identification testimony.[16] In assessing the reliability of an identification and evaluating whether there exists a high likelihood of misidentification, several factors should be considered.[17] This analysis is determinative of whether the evidence should be permitted to go to the jury in the criminal setting.[18] Both *Stovall* and *Manson* reflect "the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability."[19]

The factors for determining reliability under *Manson* include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to

---

[13] *Hernandez v. Terrones,* 397 Fed. Appx. 954, 969 (5th Cir. 2010) (citing *Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), overruled on other grounds by *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987).
[14] *Manson*, 432 U.S. at 113.
[15] *Id.* at 113 n.13
[16] I*d.* at 114.
[17] *Id.* (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972)).
[18] *See Biggers*, 409 U.S. at 201.
[19] *Manson*, 432 U.S. at 112.

be weighed the corrupting effect of the suggestive identification itself." Once the Court has an opportunity to assess the totality of circumstances regarding the identification, the Court then must ask itself whether there is "a very substantial likelihood of irreparable misidentification."[20] "Short of that point, such evidence is for the jury to weigh" and no constitutional injury has occurred.[21]

The first factor, the opportunity to view, counsels in favor of reliability under these facts. There is no genuine issue of material fact that Det. Crain was present inside the CI's motor vehicle at the same time as "Mike," that the controlled purchase occurred at approximately 4:38 in the afternoon, and natural light would have permeated throughout the vehicle as the transaction took place in a parking lot outside a set of apartments.

The second factor, the degree of attention, also counsels in favor of reliability. Det. Crain, just like the undercover officer in *Manson*, was "not a casual or passing observer, as is so often the case with eyewitness identification."[22] Det. Crain was a trained police officer working in the STPSO narcotics division in an undercover capacity at that time. Furthermore, as the *Manson* Court rightly observed, peace officers are "specially trained, assigned, and experienced . . ., [and are] expected to pay scrupulous attention to detail."

The third factor, the accuracy of description, also counsels in favor of reliability. As the Court may observe by listening to the audio recording of this encounter, Det. Crain relayed his description of the "Mike" suspect mere moments following that individual's exit from their vehicle. This description included the subject's race, style of his hair, clothing worn, and tattoos

---

[20] *Manson*, 432 U.S. at 1116 (citation omitted).
[21] *Id.*
[22] *Id.* at 114.

visible on the subject's right bicep. Contrary to the Plaintiff's declaration, Det. Crain relayed to his fellow officers that "Mike" was wearing a "white, wife-beater" not a "white, white beard."[23]

The fourth factor, the witness' level of certainty, also counsels in favor of reliability. There is no genuine dispute that the photograph used by Det. Crain in making his identification was of the plaintiff, and Det. Crain even went so far as to execute an affidavit of identification to the effect that he knew the Plaintiff by personal contact mere hours following this encounter.[24]

The fifth factor, the time between the crime and the confrontation, also counsels in favor of reliability. Det. Crain's description of the subject was given to Det. Crain within seconds of the subject's exit from the vehicle. The photographic identification and execution of the affidavit of identification took place approximately four and a half hours following his personal contact with "Mike."

Just as in *Manson*, any potential defect of Det. Stephens providing a single photo of a potential suspect to Det. Crain rather than a full lineup properly would go to the weight and credibility of Det. Crain's testimony at the Plaintiff's previous criminal trial, rather than the substance of the potential testimony itself. As such, the Plaintiff has failed to show that the totality of these circumstances created a "very substantial likelihood of irreparable misidentification."[25]

Finally, the Plaintiff has failed to show that Det. Stephens' decision to show Det. Crain his photograph was, in fact, a violation of any constitutionally protected right. The Supreme Court's jurisprudence on this topic is clear; an unduly suggest identification procedure is not,

---

[23] Compare Rec. Doc. 83-10(Kel audio filed via manual attachment) beginning at 00:24:28 with Rec. Doc. 88-4, ¶ 4 ("I did not at any time have a "white, white beard" as described by Detective Scott Crain . . . .").
[24] *See* Rec. Doc. 83-5.
[25] *Manson*, 432 U.S. at 1116.

89211/461228

alone, a constitutional injury.[26] Instead, the Plaintiff must show that, in order for there to be a due process violation in the context of an unduly suggestive identification procedure, the defendant's right to a fair trial was actually impaired. The Plaintiff has not provided <u>any</u> summary judgment evidence to show that his right to a fair trial was impaired because of Det. Crain's identification. The Plaintiff has failed to offer any evidence that would indicate Det. Crain identified the Plaintiff as "Mike" during his criminal trial; instead, the Plaintiff's declaration only notes that Det. Crain testified that he did not observe any gold teeth on "Mike" during the April 23, 2011 drug transaction.

At the end of the day, this case turns on whether the Plaintiff has offered any competent summary judgment evidence to show Det. Stephens lacked arguable probable cause before requesting the warrant for the Plaintiff's arrest. He has failed to satisfy this burden.

### b. **The Plaintiff has failed to show a break in the chain of custody for the cocaine obtained during the controlled purchase**

Within his opposition, the Plaintiff asserts that Det. Stephens made deliberate misrepresentations to Judge Penzato in his affidavit in support of an arrest warrant. The crux of this argument lies in the weight discrepancy between the bag that was obtained by Det. Crain, and weighed by Det. Stephens immediately thereafter, and the total weight of the substance as measured by the St. Tammany Parish Crime Lab. The Plaintiff's opposition argues that "every piece of evidence submitted in Defendant Stephens' Motion shows that he allegedly weighed and put into evidence "approximately 4.5 grams" of powder in relation to this investigation."

However, this is not true. In his written narrative regarding this investigation, Det. Stephens specifically noted that he "**weighed the bag** which had an approximate weight of 4.5

---

[26] *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977))

89211/461228

grams."[27] Det. Stephens filled out a Request for Narcotics Analysis form, which also included the chain of custody for this material from the moment it was submitted into the STPSO's evidence vault up to the time Captain Harry O'Neal checked the material out for scientific analysis on May 4, 2011.[28] Captain O'Neal's Scientific Analysis Report indicated he examined "one (1) sealed brown evidence envelope containing one (1) clear plastic bag containing 3.25 grams of white material."[29] The STPSO case number for the Request for Narcotics Analysis and Scientific Analysis Report are identical.[30]  As such, there is no legitimate discrepancy between the weight as measured by Det. Stephens and the weight measured by Captain O'Neal considering one measurement included the weight of the clear plastic bag and the other did not.

The Plaintiff argues that the substance examined by Captain O'Neal was not the same substance as that recovered by Det. Crain; however, the Plaintiff has offered no evidence to support such a finding. Indeed, numerous courts from other jurisdictions have upheld the admissibility of drug evidence when faced with similar challenges based on weight variations.[31]

In his opposition, the Plaintiff cites to the Fifth Circuit's opinion in *Freeman v. County of Bexar* to support the proposition that an officer is  liable under § 1983 where he knowingly provides false information to secure an arrest warrant or gave false information in reckless

---

[27] Rec. Doc. 83-6, p. 4, final paragraph ("Detective Stephens weighed the bag which had an approximate weight of 4.5 grams.")
[28] Rec. Doc 83-6, p. 8.
[29] Rec. Doc 83-6, p. 9.
[30] *Compare* Rec. Doc. 83-6, p. 8 with Rec. Doc. 83-6, p. 9.
[31] *See, e.g., United States v. Lothridge*, 332 F.3d 502, 504 (8th Cir. 2003) (finding chain of custody existed despite fact that crack cocaine was analyzed at three different weights (41.16 grams, 35.86 grams, and 36.00 grams) in preparation for trial); *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767, 771 n.1 (Ark. 2001) (noting slight variation in weight of drug exhibits could result from "differing sensitivity in the scales" used by the officer and the lab technician); *Garcia v. State*, 721 So. 2d 1248, 1248 (Fla. Dist. Ct. App. 1998) (finding cocaine properly admitted despite discrepancy between officer weighing cocaine with packaging and chemist weighing drug alone); *Horne v. State*, 318 Ga. App. 484, 733 S.E.2d 487, 488 (Ga. Ct. App. 2012) (finding difference between cocaine's field weight (20.6 grams) and crime lab weight (17 grams) not sufficiently material to require exclusion on chain-of-custody grounds where arresting officer weighed drug in packaging and chemist weighed it out of the package); *People v. Lanza*, 299 A.D.2d 649, 749 N.Y.S.2d 618, 621 (N.Y. App. Div. 2002) (holding discrepancy between officer's record of nine grams of cocaine including the evidence bag and the lab's record of .40 grams went to the weight of the evidence and not its admissibility).

disregard of the truth.[32] However, the Plaintiff omits the *Freeman* Court's further holding that he is also required to "demonstrate an issue of material fact as to whether any reasonably competent officer possessing the information that each officer had at the time he swore his affidavit could have concluded that a warrant should issue."[33]

In other words, whether a properly reconstructed affidavit under *Franks* and *Freeman* "supported a finding of probable cause is beside the point if [the officer], at the time she swore out her affidavit, had probable cause to believe" a crime had been committed."[34] Even assuming Det. Stephens had included the weight of the white substance, rather than the aggregate weight of the substance and plastic bag, within his application for an arrest warrant, there is no question any reasonably competent officer in his possession and holding the same information would have concluded that a warrant should issue.

## CONCLUSION

For these reasons, Defendant Brandon Stephens respectfully submits there are no genuine issues of material fact and that he is entitled to summary judgment.

Dated: November 6, 2019

**Respectfully submitted,**

*/s/ Cody J. Acosta*
**CHADWICK W. COLLINGS (#25373)
ANDREW R. CAPITELLI (#31649)
CODY J. ACOSTA (#37005)
MILLING BENSON WOODWARD
68031 Capital Trace Row
Mandeville, LA 70471
Telephone:   (985) 292-2000
Facsimile:    (985) 292-2001
ccollings@millinglaw.com**

*Attorneys for Deputy Brandon Stephens*

---

[32] Rec. Doc. 87, p. 11.
[33] *Freeman v. County of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000).
[34] *Jones v. Perez*, 2019 U.S. App. LEXIS 30946, *10 (5th Cir. 10/16/2019).

89211/461228